The Honorable James L. Robart

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CELL THERAPEUTICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE LASH GROUP, INC. and DOCUMEDICS ACQUISITION CO., INC., <br><br> Defendant. | Case No. 07-CV-310 <br><br> **PLAINTIFF CELL THERAPEUTICS, INC.'S REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER RE UNREASONABLE RULE 30(B)(6) NOTICE** <br><br> Re-Noted on Motion Calendar per agreement of the parties: <br> May 12, 2008 |

PLTF. CTI'S REPLY RE MOT. FOR PROTECTIVE
ORDER RE UNREASONABLE RULE 30(B)(6)
NOTICE –
NO. CV 07-0310 JLR

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104-7098
Telephone (206) 447-0900

Contrary to the assertions in Lash's opposition ("Opposition") to CTI's Motion for Protective Order re Unreasonable 30(b)(6) Notice ("Motion"), forcing CTI to designate a witness to speak to Lash's Topic 1 would be improper and impossible. Lash's notice fails to state with reasonable particularity the topic of testimony. As such, CTI would be specifically injured if forced to designate a representative on this one topic (out of twenty-three in the notice). Moreover, it would be unduly burdensome for Lash to depose CTI's Chief Financial Officer, Louis Bianco, for two days, given that he is being deposed in both contexts on the same subjects.

## I.    CTI HAS MET ITS BURDEN OF SHOWING GOOD CAUSE FOR A PROTECTIVE ORDER REGARDING TOPIC 1.

As stated in its Motion, Topic 1 of Lash's Rule 30(b)(6) notice is impossibly broad in that it seeks testimony regarding "sales and marketing of Trisenox from 2000 until CTI sold Trisenox in 2005, including, but not limited to, CTI's communications with physicians regarding off-label uses of Trisenox." Motion at 4.

Lash cites cases standing for the bland proposition that "broad allegations of harm" do not meet the "good cause" showing required for a protective order to issue under Rule 26(c). Opposition at 3. Yet CTI's Motion laid out how Topic 1 is impossibly broad and general, and the Motion therefore meets the standard of good cause. Topic 1 is unduly burdensome because it (i) seeks information about an impossible number of specific communications, (ii) cannot practically be prepared for because of its breadth and because there are no sales and marketing employees still at the company, (iii) is not reasonably particular in that it touches on an incredibly broad subject matter, and (iv) asks CTI to marshal all of the tens of thousands of sales and marketing related documents produced to Lash and assemble Lash's case for it. *See* Motion at 2-5. CTI has thus identified the specific injuries it will suffer due to the undue burden, impossibility, and redundancy created by Lash's notice, and does not rely on mere vague complaints about the costs of discovery.

Though there are many legitimate uses of the Rule 30(b)(6) mechanism, Lash's Topic 1 is not one of them. A Rule 30(b)(6) deposition can help identify the key witnesses early in a

PLTF. CTI'S REPLY RE MOT. FOR PROTECTIVE     2
ORDER RE UNREASONABLE RULE 30(B)(6)
NOTICE –
NO. CV 07-0310 JLR

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104-7098
Telephone (206) 447-0900

case and therefore speed discovery. It can concentrate all of a corporation's knowledge on a *limited* subject matter into one person so as to reduce litigation costs. It can also allow for an inquiry into a corporation's "state of mind" or knowledge, which is otherwise impossible to do given that a corporation's knowledge is necessarily spread among numerous individuals. Yet here, Lash demands that CTI prepare a witness on an enormous subject matter which no witness can possibly master, all for the admitted hopes of "binding" the corporation to that representative's inevitably imperfect mastery of the subject. Lash has asked CTI to play a sucker's game with no legitimate justification, given that Lash will depose five witnesses who actually do have such knowledge.

Lash brazenly complains that CTI seeks to deprive it of "binding" testimony on Topic One's subject of sales and marketing. Opp. at 3. Such testimony, however, is evidence to be weighed and tested like any evidence. "[T]estimony by a Rule 30(b)(6) designee is not a binding admission on the designating corporation, but, rather, is 'evidence which, like any other deposition testimony, can be contradicted.'" *Synopsys Inc. v. Magma Design Automation, Inc.*, No. C-04-3923 MMC, 2007 WL 322353, *31 (N.D. Cal. Jan. 31, 2007) (quoting *A.I. Credit v. Legion Ins. Co.*, 265 F.3d 630, 637 (7th Cir. 2001)).[1] Yet Lash will suffer no lack of testimony on this subject, as it is deposing individuals who variously served as Vice President of Sales and Marketing, Director of Sales and Marketing, Director of Marketing, Director of Sales, director of operations for sales and marketing, Regional Business Director (one who oversaw the sales force in the eastern half of the United States and one who

---

[1] *See also A.I. Credit Corp.*, 265 F.3d at 637 (7th Cir. 2001) (noting that nothing in the advisory committee notes indicates that the Rule goes so far as to suggest the testimony binds the corporation to the designee's recollection); *Indus. Hard Chrome, Ltd. v. Hetran, Inc.*, 92 F. Supp. 2d 786, 791 (N.D. Ill. 2000) ("testimony given at a Rule 30(b)(6) deposition is evidence which, like any other deposition testimony, can be contradicted and used for impeachment purposes"); *United States v. Taylor*, 166 F.R.D. 356, 362 n. 6 (M.D.N.C. 1996) (testimony of Rule 30(b)(6) designee does not bind corporation in sense of judicial admission; if altered, the testimony can be explained and then explored through cross-examination as to why it was altered); 8A Wright & Miller, Federal Practice & Procedure § 2103 (the testimony of a Rule 30(b)(6) representative, although admissible against the party that designates the representative, is not a judicial admission absolutely binding on that party).

PLTF. CTI'S REPLY RE MOT. FOR PROTECTIVE    3
ORDER RE UNREASONABLE RULE 30(B)(6)
NOTICE –
NO. CV 07-0310 JLR

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104-7098
Telephone (206) 447-0900

oversaw the sales force in the western half), and a sales representative.

Lash also claims that it has a "substantial need" for testimony because Topic 1 is "central" to the litigation. Opp. at 6. *If* that were true, this argument would be an admission that Lash seeks a representative to testify regarding entire swaths of the case, which is inconsistent with the rule's requirement that a topic be "reasonably particular." Yet it is not. In opposing this motion, it is clear that Lash's strategy is to duck and weave by raising extraneous allegations in order to avoid responsibility it took on when it held itself out as a reimbursement expert. In fact, as Lash's own account representative testified in the hearing before Judge Pechman in the *qui tam* case:

> Q [counsel for U.S.] * * * [B]riefly summarize your understanding of what government Exhibit 9 [letter from Documedics' Adam Gillette to Medicare carriers announcing Trisenox's listing in the ACCC Bulletin] means to you . . .?
> A [Adam Gillette, Documedics' account representative for CTI] At this time this exhibit was to notify Medicare carriers of newly approved – or newly added Compendia listed diagnoses. It was Documedics understanding that Medicare carriers often don't have the time or resources to update their coverage policies in a timely fashion.
> Q * * * [D]o you understand that government's Exhibit 9 is representing that the off label indications of Trisenox are in the Compendia Based Drug Bulletin or is it your understanding that there is a representation in government's Exhibit 9 that they are also in the actual Compendia?
> A It is my understanding that these indications listed on the letter were Compendia listed.
> * * *
> Q And what do you know now?
> A That APL, the approved indication for Trisenox, is the only diagnosis listed in the Compendia.
> * * *
> Q So based on that understanding is government's Exhibit 6 [the ACCC Bulletin] true or false, with respect, with respect to the listings for the off label indications of Trisenox?
> A The Compendia Based Drug Bulletin does not – it has a list of drugs, not all of which are Compendia listed.
> Q But when you wrote government's Exhibit 9 did you believe that the off label indications for Trisenox were in the actual Compendia?
> A Yes, I did.
> Q Now, when you realized that – when you realized that did you change your opinion whether government's Exhibit 9 was truthful or not?
> A Yes, I did.
> Q And what was your opinion?
> A Well, my opinion then was that this letter basically contains misinformation.

PLTF. CTI'S REPLY RE MOT. FOR PROTECTIVE    4
ORDER RE UNREASONABLE RULE 30(B)(6)
NOTICE –
NO. CV 07-0310 JLR

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104-7098
Telephone (206) 447-0900

> Q And how did you react when you realized government's Exhibit 9, with your signature on it, contains misinformation?
> A I was very upset to hear it. I was concerned about the reputation of Documedics, as well as my own reputation. And I was concerned that this letter went out to Medicare carriers that gave this misinformation and put Documedics' reputation in peril.
>
> * * *
>
> Q [Relator's counsel] Was it your understanding that Documedics was retained by Cell Therapeutics as their reimbursement expert at the time your letter went out?
> A Yes.
> Q And was it your understanding that Documedics would ultimately be responsible for reimbursement and consultation regarding reimbursement of drugs from CTI, including Trisenox, both on label and off label?
> A Yes.
>
> * * *
>
> Q And, Mr. [Gillette], when you prepared this letter [to Medicare carriers] I am sure you would have reviewed it for its accuracy?
> A Yes. I prepared the letter and spoke to my researchers who vetted its – vetted it for accuracy.
>
> * * *
>
> Q And if someone, such as [Relator] Jim Marchese, wanted to rely upon, certainly they would have the experience and the knowledge for him to reply upon their opinions and comments, correct?
> A Yes.
> Q So if [Documedics researcher] Andrea Dumat, as an expert, gave certain opinions to Jim Marchese regarding orphan drug status and whether a drug should be paid by Medicare, it would be reasonable for him to rely upon her opinions since she was an expert in the field of reimbursement, correct?
> A Yes.

Declaration of Paul F. Rugani ("Rugani Decl."), Ex. A. at 70:20-72:24; 73:23-74:6; 78:12-15; 79:24-80:8. This testimony reveals that CTI's sales and marketing allegations are but a sideshow meant to distract from Lash's core culpability for the alleged Medicare overpayments made by Medicare carriers. The sales and marketing allegations were thus certainly not the "cornerstone of the Government's allegations against [CTI] in the *qui tam* action." Opp. at 6. In fact, how CTI understood and treated its listing in the ACCC Bulletin for off-label uses was at the heart of the *qui tam* case against CTI. Lash is responsible for the ACCC Bulletin because it personally distributed the ACCC Bulletin to Medicare carriers with a letter articulating its wrongful advice. Complaint at ¶ 25. And counsel for the government

PLTF. CTI'S REPLY RE MOT. FOR PROTECTIVE ORDER RE UNREASONABLE RULE 30(B)(6) NOTICE –
NO. CV 07-0310 JLR          5

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104-7098
Telephone (206) 447-0900

conceded that "it is not really in dispute that the ACCC fraud was a principal theory the government pursued." *See* Rugani Decl., Ex A at 108:21-23.[2]

## II. IT WOULD BE UNDULY BURDENSOME TO SUBJECT CTI'S CFO TO TWO SEVEN-HOUR DEPOSITIONS.

Lash argues that it is entitled to depose one of CTI's top executives, Louis Bianco, in two seven-hour sessions, one for his deposition as a designee on certain of the Rule 30(b)(6) topics and one for his deposition as a fact witness. This request is unduly burdensome because both depositions will cover the same ground, making the two depositions of this key executive unnecessary. As Chief Financial Officer, Mr. Bianco will not have extensive knowledge of the sales and marketing issues of the case, and the topics on which he can speak as a percipient witness will be the same as those for which CTI will designate him as corporate representative. These topics surround damages in this case, CTI's communications with the government regarding the *Marchese* case, and CTI's relationships with certain third parties. The topics on which CTI will designate Mr. Bianco as its representative fairly correlate with the areas to which he might speak during his fact deposition. Some limitation is also called for in this situation, where Mr. Bianco will only be designated to speak to half of the 30(b)(6) topics, and another designee or designees will speak to the remaining half. *See* Rugani Decl., Ex. B. The burden to CTI of taking up two days of Mr. Bianco's time is not called for under these circumstances.

In support of its position, Lash cites *Sabre v. First Dominion Capital LLC*, in which the court considered the appropriateness of granting two seven-hour depositions of the same witness. No. 01CIV2145BSJHBP, 2001 WL 1590544 (S.D.N.Y. Dec. 12, 2001). Yet the

---

[2] *See also id.* at 105:1-13 ("... [Marchese] brought complaints about patients getting harmed because side effects of the drug were not being disclosed, he brought kickbacks, he brought the general, you are not supposed to market a drug off label if you are the drug company. But he didn't bring us the ACCC. The government kept trying to figure out where the overpayments were. And I was just as confused – Well, I won't testify. But the government, I think – and Mr. Marchese certainly described the confusion in the government. There was a lot of confusion on the part of the government. There were even Medicare directors that were confused. But Mr. Marchese didn't tell us that.").

*Sabre* court actually supports limiting deposition time in a circumstance similar to this one, where the testimony is likely to be redundant. The court endorsed limiting testimony where the deposition of the individual in question would overlap with the entity's knowledge on that subject. *Id.* at *2 (stating that where the knowledge of an individual concerning a particular subject also constitutes the total knowledge of the entity, "the witness could simply adopt the testimony he or she provided in a former capacity, thereby obviating the need for a second deposition."). Moreover, Lash goes too far in asserting that the case supports its quest for a seven hour deposition of each Rule 30(b)(6) witness. Instead, in allowing for separate fact and Rule 30(b)(6) depositions to take place based on the facts of the case, the court emphasized the contrary in its holding: "[t]his is not to say, however, that the inquiring party has *carte blanche* to depose an individual for seven hours as an individual and seven hours as a 30(b)(6) witness." *Id.* Any such determination must be made of the facts of a particular case.

Other courts take a similarly practical approach to analyzing the appropriateness of multiple depositions. In *Miller v. Waseca Medical Center*, the court stated:

> The label by which a witness is summoned to testify, like the number of cases which are pending, would seem to have no bearing on whether a particular deposition will last too long, or whether it has lasted too long. As the Court in *Sabre* noted, even if there are two presumptive seven hour periods: "This is not to say, however, that the inquiring party has *carte blanche* to depose an individual for seven hours as an individual and seven hours as a 30(b)(6) witness." Additional specific factual inquiry is needed. A witness may be entitled to a Protective Order after only an hour has elapsed in one case, and more than seven hours may be needed in another case.

205 F.R.D. 537, 540 (D. Minn. 2002). Given the overlap between Mr. Bianco's two testifying roles (as one of CTI's Rule 30(b)(6) witnesses and as a fact witness), in this circumstance one deposition is sufficient.

### III. CONCLUSION

Good cause exists to grant CTI a protective order shielding it from Topic 1 because the topic is insufficiently particular and unduly burdensome. Similarly, good cause exists to limit Lash's ability to unduly burden CTI's executives and employees by deposing them twice.

PLTF. CTI'S REPLY RE MOT. FOR PROTECTIVE   7
ORDER RE UNREASONABLE RULE 30(B)(6)
NOTICE –
NO. CV 07-0310 JLR

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104-7098
Telephone (206) 447-0900

1  DATED this 12th day of May, 2008

2                              HELLER EHRMAN LLP

3

4                              By  s/ Mathew L. Harrington
                                  DANIEL J. DUNNE, JR. (Bar No. 16999)
5                                 BRENDAN T. MANGAN (Bar No. 17231)
                                  MATHEW L. HARRINGTON (Bar No. 33276)
6
                                  HELLER EHRMAN LLP
7                                 701 Fifth Avenue, Suite 6100
                                  Seattle, WA 98104-7098
8                                 Telephone: +1.206.447.0900
                                  Facsimile: +1.206.447.0849
9

10                                Attorneys for Plaintiff Cell Therapeutics, Inc.

PLTF. CTI'S REPLY RE MOT. FOR PROTECTIVE      8
ORDER RE UNREASONABLE RULE 30(B)(6)
NOTICE –                                                    Heller Ehrman LLP
NO. CV 07-0310 JLR                                          701 Fifth Avenue, Suite 6100
                                                            Seattle, Washington 98104-7098
                                                            Telephone (206) 447-0900

# CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2008, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following listed participants:

Kelly P. Corr
Laurie M. Thornton
CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, WA 98154-1051
Telephone: 206-625-8600
Facsimile: 206-625-0900

Rosalie Euna Kim
REED SMITH LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA 94111-3922
Telephone: 415-543-8700
Facsimile: 415-391-8269

Thomas H. Suddath
REED SMITH LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
Telephone: 215-851-8100
Facsimile: 215-851-1420

By s/ Mathew L. Harrington
    Daniel J. Dunne (Bar No. 33276)
    HELLER EHRMAN LLP
    701 Fifth Avenue, Suite 6100
    Seattle, WA 98104-7098
    Telephone: 206-447-0900
    Facsimile: 206-447-0849

SE 2251425 v4
5/12/08 4:11 PM (26866.0005)

PLTF. CTI'S REPLY RE MOT. FOR PROTECTIVE       9
ORDER RE UNREASONABLE RULE 30(B)(6)
NOTICE –
NO. CV 07-0310 JLR

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104-7098
Telephone (206) 447-0900