1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

11  CELL THERAPEUTICS, INC.,

12          Plaintiff,

13      v.                                          CASE NO. C07-310JLR

14  THE LASH GROUP, INC., et al.,                   ORDER GRANTING
                                                    DEFENDANTS' MOTION FOR
15          Defendants.                             JUDGMENT ON THE
                                                    PLEADINGS
16

17

18

19          This matter comes before the court on Defendant The Lash Group, Inc.'s ("Lash")

20  motion for judgment on the pleadings (Dkt. # 26) and Plaintiff Cell Therapeutics, Inc.'s

21  ("CTI") motion to strike documents filed with Lash's Reply (Dkt. # 41).  Having heard

22  argument and considered the papers, the court GRANTS Lash's motion for judgment on

23  the pleadings (Dkt. # 26) and DENIES CTI's motion to strike (Dkt. # 41).  The court

24  STRIKES as moot the other pending motions (Dkt. ## 55, 81, 82, 88, 89).

25

26

27

28

ORDER GRANTING MOTION FOR
JUDGMENT ON THE PLEADINGS – 1

**BACKGROUND**

In September 2000, CTI received FDA approval for a drug called Trisenox to be used in the treatment of a rare form of cancer, acute promyelocytic leukemia ("APL"). (Compl. (Dkt. # 1) ¶ 13.)  Because CTI lacked a reimbursement department, it hired Documedics Acquisition Co., Inc. ("Documedics")—which in 2003 merged into Lash—to be its reimbursement expert.[1]  (*Id.*)  The Service Agreement between CTI and Lash contains mutual indemnification clauses.  (Compl., Ex. 1, at ¶¶ 8.1–8.2.)

CTI contends that beginning in 2001, Lash failed to advise CTI properly about the effect of Trisenox's listing in a particular volume of the United States Pharmacopoeia Dispensing Information ("USPDI") Compendia, to which Medicare carriers look in determining whether "off-label" (i.e., not yet approved by the FDA) uses of a drug will be reimbursable.  (Compl. ¶¶ 21–29.)  In 2004, the United States Attorney's Office in the Western District of Washington ("USAO") investigated certain business practices related to Trisenox, including the drug's promotion and statements made by CTI and Lash related to potential Medicare reimbursement for the use of Trisenox to treat off-label indications. (Compl. ¶ 30.)  The government's investigation implicated potential claims under the payment-by-mistake doctrine or the False Claims Act ("FCA").  (Compl. ¶ 32.)  CTI contends that Lash was the source of erroneous and incomplete advice that led to much of the conduct that was the subject of the government's investigation.  (Compl. ¶ 34.)

In 2006, CTI employee James Marchese brought an FCA qui tam action against CTI and Lash.  *See United States ex rel. Marchese v. Cell Therapeutics, Inc.*, No. 06-

---

[1]The two named Defendants are thus the same entity.

ORDER GRANTING MOTION FOR
JUDGMENT ON THE PLEADINGS – 2

168MJP (W.D. Wash. filed Feb. 1, 2006).[2]  The government chose to intervene as to CTI

but not as to Lash.  In April 2007, CTI settled with the government for $10.5 million.  In

late-April 2008, Lash settled with the relator for an as-yet-undisclosed sum.  The

*Marchese* matter is now closed, though the relator and CTI continue to dispute costs and

attorney's fees related to the settlement.

CTI never brought cross-claims for contractual indemnification in *Marchese*.

Instead it brought a state court action in January 2007, which was soon thereafter

removed to federal court, months before it settled with the government in the *Marchese*

matter.  Here, CTI alleges five causes of action: (1) declaratory relief that Lash is

contractually obligated to indemnify CTI for damages related to the USAO's

investigation and any resulting judgment or settlement; (2) breach of the terms of service

in the Service Agreement; (3) breach of the Service Agreement's contractual

indemnification clause; (4) breach of the implied warranty of good faith and fair dealing;

and (5) negligence/breach of the duty of care in providing professional services.  By

mutual agreement, the parties avoided nearly all activity in this case pending the outcome

of the *Marchese* action and the unsuccessful mediation effort that followed.  Discovery

appears to have begun in earnest only in March 2008.  (CTI's Resp. to Mot. to Strike

(Dkt. # 70) at 1–2.)

Lash now moves for judgment on the pleadings, contending that all of CTI's

claims are barred by the principle set forth in *Mortgages, Inc. v. U.S. Dist. Court for Dist.

of Nev.*, 934 F.2d 209, 214 (9th Cir. 1991), and its progeny: FCA defendants may not

seek indemnification or contribution from co-participants in a scheme to defraud the

[2]Mr. Marchese named as a defendant AmerisourceBergen Corp., which acquired
Documedics and integrated it into Lash.  *See Marchese*, No. 06-168MJP, Complaint ¶ 21 (Feb. 1,
2006).

ORDER GRANTING MOTION FOR
JUDGMENT ON THE PLEADINGS – 3

government.  CTI moves to strike two documents from *Marchese* that Lash filed with its

Reply: the government's Complaint in Intervention and CTI's settlement agreement.

## DISCUSSION

The court may grant a Federal Rule of Civil Procedure Rule 12(c) motion for

judgment on the pleadings only if, taking all the allegations in the pleading as true, the

moving party is entitled to judgment as a matter of law.  *See McSherry v. City of Long

Beach*, 423 F.3d 1015, 1021 (9th Cir. 2005); *see also* 5C Charles A. Wright & Arthur R.

Miller, *Federal Practice and Procedure* § 1367 (3d ed. 2004) (noting that the district

court will apply the same standards for granting or denying a Rule 12(c) motion for

judgment on the pleadings as it would have employed had the motion been brought prior

to the defendant's answer under Rule 12(b)(6)).  If the court must go beyond the

pleadings to resolve an issue in a Rule 12(b)(6) or Rule 12(c) motion, the court must treat

the motion to dismiss or motion for judgment on the pleadings as a motion for summary

judgment. Fed. R. Civ. P. 12(d); *see Hal Roach Studios, Inc. v. Richard Feiner and Co.,

Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989).  The court need not, however, convert a

motion for judgment on the pleadings into a motion for summary judgment when the

materials relied upon outside of the pleadings are in the record, are referenced in the

complaint and are of unquestioned authenticity, or are matters of public record.  *See

Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); *Emrich v. Touche Ross & Co.*,

846 F.2d 1190, 1198 (9th Cir. 1988).

## I.     CTI's Motion to Strike *Marchese* Documents

As a preliminary matter, the court considers CTI's motion to strike two documents

from the *Marchese* qui tam action: the government's Complaint in Intervention and CTI's

settlement agreement with the government.  *See Marchese*, No. 06-168MJP, United

ORDER GRANTING MOTION FOR
JUDGMENT ON THE PLEADINGS – 4

States' Complaint in Intervention (Apr. 16, 2007); *Marchese*, No. 06-168MJP, Stipulation of Dismissal and Motion to Lift Seal, Ex. 1 (Apr. 16, 2007) (Settlement Agreement).  The court denies CTI's motion to strike these documents for several reasons.  First, the court may take judicial notice of matters of public record.  *See Swartz*, 476 F.3d at 763.  The Complaint in Intervention and settlement agreement filed in the Western District of Washington in a case involving the parties before us qualify as matters of public record.  Had CTI chosen to bring its present causes of action as cross-claims in *Marchese*, these documents would have been part of the same record.  Second, the documents were not offered for the truth of the matters asserted but to illustrate the accepted propositions that FCA claims were made against and settled by CTI without an admission of liability.  *See* Fed. R. Evid. 801(c), 802, 803(8).  In its Response, CTI referred specifically to the *Marchese* case, the government's decision to intervene, the settlement agreement, and the settlement amount.  (Resp. (Dkt. # 38) at 2.)  Third, the Complaint in Intervention and settlement agreement do nothing more than confirm that the government alleged claims and settled a case involving the same factual scenario that is the subject of CTI's Complaint here.  *See, e.g.*, *Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir. 1993) (noting that defendants' attachment "did not rebut, challenge, or contradict anything in the complaint").  These documents raise no questions of fact and CTI has not indicated how an opportunity to present additional materials would alter the legal outcome in this case.

## II.    Lash's Motion for Judgment on the Pleadings

As to the merits of Lash's motion for judgment on the pleadings, the determinative inquiry is whether *Mortgages* and its progeny bar this indemnification action, or whether CTI's claims allege "independent damages" that should be permitted to proceed in

accordance with the Ninth Circuit's *Mortgages* companion, *United States ex rel. Madden v. Gen. Dynamics Corp.*, 4 F.3d 827 (9th Cir. 1993). CTI attempts to wriggle out of *Mortgages* and into *Madden*, but its arguments are unpersuasive because CTI's purported damages are pleaded as incidental to and dependent upon its payment of $10.5 million to settle the FCA claims in the underlying qui tam action.

In *Mortgages*, a mortgage company filed an FCA action against mortgage applicants regarding their allegedly false statements in applications for HUD-insured loans. The United States intervened in the action. The defendants filed numerous state-law claims against the relator seeking indemnification and/or contribution, including claims identical to those asserted here: breach of contract, breach of the covenant of good faith and fair dealing, and negligence. *See Mortgages*, 934 F.2d at 211 n.1. The Ninth Circuit reversed the district court's denial of the mortgage company's motion to dismiss these claims. The court noted that the FCA was designed to deter future misconduct and to compensate the government, objectives undermined by creating a right of action for contribution or indemnification under the FCA. *See id.* at 213. It held that "there is no right of indemnity or contribution among participants in a scheme to defraud the government in violation of the FCA." *Id.* at 212. "Because there is no basis in the FCA or federal common law to provide a right to contribution or indemnity in a[n] FCA action, we conclude that there can be no right to assert state law counterclaims that, if prevailed on, would end in the same result." *Id.* at 214.

Since *Mortgages*, it has been noted that "[t]he unavailability of contribution and indemnification for a defendant under the False Claims Act now seems beyond peradventure." *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 505 F. Supp. 2d 20, 26 (D.D.C. 2007); *see, e.g.*, *United States v. Dynamics Research Corp.*, 441

ORDER GRANTING MOTION FOR
JUDGMENT ON THE PLEADINGS – 6

F. Supp. 2d 259, 263–65 (D. Mass. 2006); *United States ex rel. Taylor v. Gabelli*, 2005 WL 2978921, at *10–11, *13 (S.D.N.Y. Nov. 4, 2005) (discussing *Mortgages* and rejecting plaintiff-relator's claim for restitution from defendants); *United States ex rel. Mikes v. Straus*, 931 F. Supp. 248, 261–62 (S.D.N.Y. 1996); *United States ex. rel. Public Integrity v. Therapeutic Tech. Inc.*, 895 F. Supp. 294, 296 (S.D. Ala 1995).  This does not mean that all counterclaims, cross-claims, or third-party complaints against other culpable parties in an FCA action are barred.  In *United States ex rel. Madden v. Gen. Dynamics Corp.*, 4 F.3d 827, 831 (9th Cir. 1993), the Ninth Circuit held that "[c]ounterclaims for independent damages are distinguishable . . . because they are not dependent on a qui tam defendant's liability."  *Madden* does not, however, permit an end run around *Mortgages* by allowing defendants to repackage claims for indemnification as ones for independent damages.  *See id.*  The court explained:

> [I]t is possible to resolve the issue of a qui tam defendant's liability before reaching the qui tam defendant's counterclaims.  If a qui tam defendant is found liable, the counterclaims can then be dismissed on the ground that they will have the effect of providing for indemnification or contribution.  On the other hand, if a qui tam defendant is found not liable, the counterclaims can be addressed on the merits.

*Id.*

In *United States ex rel. Miller v. Bill Harbert Int'l Construction, Inc.*, 505 F. Supp. 2d 20 (D.D.C. 2007), the District of the District of Columbia cogently and comprehensively explicated how *Madden*'s allowance of claims for independent damages delimits *Mortgages*'s bar on claims for FCA indemnification.  The *Miller* court noted that "[t]he use of the word 'independent' has led to some confusion, and courts would be better served to describe the permissible claims as 'not dependent on the fact of FCA liability.'"  *Id.* at 27.  There are two ways in which an FCA defendant may seek "independent damages" and thus be permitted to pursue its claims.  The first is where the

ORDER GRANTING MOTION FOR
JUDGMENT ON THE PLEADINGS – 7

conduct at issue is distinct from the conduct underlying the FCA case, e.g., where a defendant sought costs against a relator who, despite being successful on her FCA claims, had committed subsequent, serious litigation abuses. *Id.* (citing *United States ex rel. Grandeau v. Cancer Treatment Ctrs. of Am.*, 2005 WL 300414 (N.D. Ill. Feb. 4, 2005)). The second is where the FCA defendant's claim, though bound up in the facts of the FCA case, can only prevail if the defendant is found to be *not* liable in the FCA case. *Id.* This is where the word "independent" has sown confusion:

> These claims are actually quite dependent, but they depend on a finding that the FCA defendant is not liable, whereas the impermissible class of claims depend on the FCA defendant being found liable. The FCA defendant thus has a cause of action for damage to him independent of his FCA liability. These claims have surfaced in the form of libel, defamation, malicious prosecution, and abuse of process—claims that succeed upon a finding that the relator's accusations were untrue. . . . The simple rule that emerges from these cases is therefore that a claim by an FCA defendant which requires for its success a finding that the FCA defendant is liable is the kind of claim barred by the FCA.

*Id.* at 28.

Applying the *Miller* court's synthesis of *Mortgages* and *Madden* shows that CTI's Complaint is barred because CTI has not asserted a claim for independent damages. As to the first category, Lash's conduct is not distinct from the conduct at issue in the *Marchese* qui tam action. CTI contends that Lash inappropriately advised it regarding the sales, marketing, and reimbursement for Trisenox. Even if the court accepts CTI's argument that it faced "increased costs of capital" that exceed its explicit prayer for $10.5 million in indemnification, it incurred $12.3 million in supplemental damages only because Lash allegedly engaged in misconduct that gave rise to FCA liability. As to the second category, CTI can prevail here *only* if the court accepts that CTI paid the government and ceased its practices surrounding Trisenox in order to settle its FCA claims. If CTI need not have altered the way in which it sold, advertised, and marketed

ORDER GRANTING MOTION FOR
JUDGMENT ON THE PLEADINGS – 8

Trisenox, it need not have faced a qui tam action and need not have shifted its investments away from Trisenox. The parties were alleged to be co-participants in a fraudulent scheme and CTI may not seek indemnification from Lash.

CTI contends either that *Mortgages* does not apply or that *Madden* does apply because: (1) claims for express contractual indemnification are not barred; (2) *Mortgages* was meant only to innoculate relators; (3) CTI asserted its indemnification claim in a separate action and not as a counterclaim in an FCA action; (4) the common law provides the fairest way to apportion just results and preserves indemnification; (5) application of *Mortgages* to invalidate the right to indemnification would violate due process; (6) CTI was never found to be liable because it settled its FCA claims before they were ever adjudicated; and (7) CTI seeks damages independent of the FCA action. None of these arguments has merit.

### 1. *Express Contractual Indemnification*

Neither *Mortgages* nor the cases that have applied *Mortgages* have distinguished between express and implied contractual indemnification claims. *See, e.g.*, *Mortgages*, 934 F.2d at 211 n.1, 214; *The Heart Doctors, P.S.C. v. Layne*, 2006 WL 2692694, at *1 (E.D. Ky. Sept. 13, 2006); *Public Integrity*, 895 F. Supp. at 296; *United States ex rel. Stephens v. Prabhu*, 1994 WL 761237, at *1 (D. Nev. Dec. 14, 1994). In *United States ex rel. Burns v. Hensel Phelps Constr. Co.*, No. 3:94CV-11-S (W.D. Ky. Sept. 3, 1999) (Reply (Dkt. # 39), Ex. 1), the district court granted a motion by third-party defendants to dismiss all claims, including a claim for express contractual indemnification.[3] Here, the

---

[3]CTI cites a single case, *United States ex rel. Watkins v. AIT Worldwide Logistics, Inc.*, 441 F. Supp. 2d 762 (E.D. Va. 2006), to support its position that a claim for contractual indemnification by one FCA defendant against another FCA defendant may proceed. *Watkins* is not persuasive. The *Watkins* court confronted whether to confirm an arbitration award and thus

ORDER GRANTING MOTION FOR
JUDGMENT ON THE PLEADINGS – 9

court declines to carve out an exception to *Mortgages* for express contractual indemnification.[4]

### 2.    *Lash Is a Third Party, Not a Relator*

In *Dynamics Research Corp.*, the District of Massachusetts rejected the same argument presented here that *Mortgages* applies only to defendants seeking a remedy against qui tam plaintiffs with unclean hands:

> The Ninth Circuit's opinion relies very little on the fact that the defendant in its case was seeking damages from a qui tam plaintiff. None of the steps in the Court's analysis hinged on the identity of the potential indemnitee/contributee. Similarly, the legislative history did not simply lack reference to contribution/indemnification claims against qui tam plaintiffs: It lacked reference to contribution or indemnification claims being available against *any* party. Finally, nothing in the Ninth Circuit's federal common law analysis suggests that the court would have arrived at a different conclusion if the potential indemnitee had been a third party . . . instead of a qui tam plaintiff (as in *Mortgages*).

*Dynamics Research Corp.*, 441 F. Supp. 2d at 264. A number of other courts have followed suit by dismissing indemnification claims asserted by FCA defendants against third parties. *See, e.g.*, *The Heart Doctors*, 2006 WL 2692694, at *3; *Public Integrity*, 895 F. Supp. at 296.

The court finds the reasoning in *Dynamics Research Corp.* to be persuasive. Nothing in *Mortgages* suggests that its holding applies only to counterclaims asserted against relators.

---

examined only whether the arbitrator "deliberately disregarded" the law by accepting the principles set forth in certain cases over the conflicting principles set forth in others. *See id.* at 767–68.

[4]CTI's counsel declined the invitation at oral argument to discuss the significance of the contract's mutual indemnification clauses, i.e., if Lash were required to indemnify CTI, so too would CTI be required to indemnify Lash. (*See* Compl., Ex. 1 ¶¶ 8.1–8.2 (Service Agreement).)

ORDER GRANTING MOTION FOR
JUDGMENT ON THE PLEADINGS – 10

1

2      **3.    *Assertion in a Separate Action Rather Than as a Counterclaim***

3          Courts have dismissed claims for indemnification filed in separate actions as well

4    as in FCA actions.  *See, e.g.*, *The Heart Doctors*, 2006 WL 2692694, at *3; *Public*

5    *Integrity*, 895 F. Supp. at 296; *Stephens*, 1994 WL 761237, at *1.  This is consistent with

6    the principle set forth in *Mortgages* that there can be no right to assert state law claims

7    that, if prevailed upon, "would end in the same result."  *Mortgages*, 934 F.2d at 214.  In

8    fact, claims against a relator—the factual scenario at issue in *Mortgages*—"might

9    properly be deemed cross-claims or third-party claims, since [the relator] has sued on

10   behalf of the government, the real party in interest."  *Miller*, 505 F. Supp. 2d at 24 n.1.  In

11   *United States v. Warnings*, 1994 WL 396432, at *8 (E.D. Pa. July 26, 1994), the district

12   court dismissed a third-party complaint and noted:

13
14              [A] right to contribution under state law would conflict with the purposes of
                the False Claims Act.  As the Ninth Circuit stated in *Mortgages*, the Act was
15              designed to deter future misconduct and to compensate the government.  This
                goal would be undermined by a right to contribution under state law in the
16              same way as it would by a right to contribution under federal law.
                Accordingly, the Court concludes that the same reasons that militate against
17              a right to contribution under federal law militate in favor of federal preemption
                of any right to contribution under state law.
18
19   The *Warnings* court thus suggested that parties should not be free to do an end run around

20   *Mortgages* simply by filing a separate action because any state-law indemnification

21   sought would be premised on—and preempted by—a federal cause of action.

22          CTI has failed to cite relevant authority to the contrary and the court finds the

23   reasoning in *Miller* and *Warnings* to be persuasive.

24      **4.    *Common Law Rights***

25          Lash fails to cite a case in which a court declined to adopt *Mortgages* because

26   applying federal common law would produce a fairer result.  The court therefore declines

27   to reject the application of *Mortgages* on this basis.

28

ORDER GRANTING MOTION FOR
JUDGMENT ON THE PLEADINGS – 11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 5.    *Violation of Due Process*

The court declines to find that applying *Mortgages*, properly limited by *Madden*, violates a litigant's due process right to an indemnification action.  CTI cites *Burch ex rel. United States v. Piqua Eng'g, Inc.*, 145 F.R.D. 452, 457 (S.D. Ohio 1992) (declining to follow *Mortgages*) and *United States ex rel. Mikes v. Straus*, 931 F. Supp. 248, 263 (S.D.N.Y. 1996) (allowing independent-damages claim for extortion to be tried separately to alleviate due process concerns).  *Burch* was decided prior to *Madden*; *Madden* took due process concerns into consideration in crafting its limitation on *Mortgages*; and *Mikes* and *Madden* apply only when a litigant has asserted independent claims, which CTI has failed to do.

### 6.    *CTI's Settlement Before Full Adjudication*

CTI argues that *Mortgages* does not apply when a party has settled and there has been no adjudication that the indemnitor-plaintiff has violated the FCA.  CTI fails, however, to cite any authority for this proposition.  Many of the relevant cases in this area were resolved at the motion to dismiss stage, i.e., before adjudication.  In *The Heart Doctors*, the Eastern District of Kentucky granted a third-party doctor's motion for summary judgment because the FCA defendant, which paid the government damages pursuant to an FCA settlement, was barred from bringing a third-party breach of contract claim against the third-party doctor to offset its FCA liability.  2006 WL 2692694, at *1.

CTI misapplies *Madden*'s discussion of "liability": "If a qui tam defendant is found liable, the counterclaims can then be dismissed on the ground that they will have the effect of providing for indemnification or contribution.  On the other hand, if a qui tam defendant is found not liable, the counterclaims can be addressed on the merits." *Madden*, 4 F.3d at 831.  According to CTI, it settled its "risk" not its "liability"; thus, its

ORDER GRANTING MOTION FOR
JUDGMENT ON THE PLEADINGS – 12

action for indemnification should proceed.  This argument is flawed.  First, as with any settlement, while there was no finding that CTI was legally liable for the FCA action, there similarly was no finding that CTI was *not* legally liable.  Second, the certainties outweigh the uncertainties: CTI paid $10.5 million to settle an FCA action in which the government never disavowed its contention that CTI committed fraud; and before the *Marchese* suit and settlement, CTI need not have altered its conduct related to the advertising, marketing, and sales of Trisenox.  Third, CTI's position would allow FCA defendants to do the kind of end run around *Mortgages* that *Madden* decried.  A settling defendant would be permitted to bring an indemnification suit against co-conspirators in a scheme to defraud the government while a non-settling defendant would be barred from bringing a similar indemnification action.  Neither Congress nor the courts have indicated that the FCA was meant to encourage co-conspirators to race to settlement in order to gain a cause of action.  The court finds that neither *Mortgages* nor *Madden* carves an exception to the bar on indemnification actions for defendants who settle their FCA suits.

### 7.   *Damages Independent of the FCA Claims*

CTI argues that its Complaint alleges independent damages permitted by *Madden* because (1) CTI's decision to settle was motivated not by the government's FCA claims but by the threat of being held liable under the doctrine of payment by mistake; and (2) four of its five causes of action refer to $12.3 million in damages that is separate and distinct from the $10.5 million settlement.  Neither contention has merit.

First, CTI argues that it should be allowed to seek indemnification for the $10.5 million settlement because it was motivated to settle not based on the risk of FCA liability but due to the risk of liability under the doctrine of payment by mistake.  This argument is neither persuasive nor supported by authority.  Whether whimsical or rational, CTI's

ORDER GRANTING MOTION FOR
JUDGMENT ON THE PLEADINGS – 13

motivation for settling the government's FCA claims is not this court's concern.  What

matters is the independence of the damages that CTI seeks.  While CTI never admitted to

liability, there is no dispute that CTI ceased the purportedly wrongful conduct and the

government never disavowed its detailed allegations about CTI's knowing and willful

violations of the FCA.  *See Marchese*, No. 06-168MJP, United States' Complaint in

Intervention (Apr. 16, 2007); *Marchese*, No. 06-168MJP, Stipulation of Dismissal and

Motion to Lift Seal, Ex. 1 (Apr. 16, 2007) (Settlement Agreement).  Thus, in *Marchese*

neither the government nor CTI agreed on how to apportion the $10.5 million settlement

between various theories of liability.  The court declines to engage in such apportionment

here based entirely on CTI's conclusory declarations unsupported by the accepted facts.

*Cf. Miller*, 505 F. Supp. 2d at 24 (noting that once an FCA judgment is satisfied, common

law claims for unjust enrichment and payment under mistake of fact are extinguished

because the common law claims "are essentially duplicative of each other and seek the

same relief that has been awarded under the jury's verdict in the FCA case").

        Second, CTI argues that even if its causes of action for declaratory relief and

contractual indemnification are barred by *Mortgages*, three other causes of

action—breach of the Terms of Service of the Service Agreement, breach of the implied

warranty of good faith and fair dealing, and negligence/breach of duty of care in

providing professional services—seek independent damages consisting largely of the

increased cost of capital.  According to CTI, had Lash informed CTI that Trisenox did not

pass the ordinary tests for granting off-label reimbursement under Medicare, CTI would

have acted to reduce substantial business losses it suffered from 2002-05.  (Resp. at 15.)

CTI disclosed its $12.3 million  "Supplement" to initial disclosures regarding damage

ORDER GRANTING MOTION FOR
JUDGMENT ON THE PLEADINGS – 14

1   computations on April 21, 2008, i.e., over a year after filing the present action.  (Add.

2   Statement (Dkt. # 80) at 1–2; CTI's Suppl. (Dkt. # 80-2) at 1–2.)

3          For the reasons stated earlier, the court rejects CTI's contention that its business

4   damages stemming from Lash's off-label reimbursement advice were independent of

5   CTI's alleged liability for the FCA claims.  CTI and Lash were co-defendants in the

6   *Marchese* qui tam action, and Lash's alleged conduct there is too inextricably intertwined

7   with the FCA allegations to be pulled out to form a basis for independent damages.  The

8   dependent nature of CTI's "Supplement to Initial Disclosure Re Damage Computations"

9   is exemplified both in CTI's Complaint and in CTI's conduct during the course of this

10  litigation.  CTI's causes of action each assert primarily that Lash's conduct "was a direct

11  and proximate cause of damage to CTI in the form of investigation, litigation and

12  settlement expenses, *including* . . . lost opportunities to pursue other means of

13  reimbursement, damage to reputation, and increased cost of capital."  (Compl. ¶ 59

14  (emphasis added); *see, e.g.*, Compl. ¶¶ 69, 73).  The word "include" means "to place, list,

15  or rate as part or component of a whole or of a larger group, class, or aggregate."

16  *Webster's Third New Int'l Dictionary* 1143 (2002).  That is, the $12.3 million in

17  supplemental business damages did not walk into this suit on its own power; the damages

18  rode on the back of the claims for FCA indemnification barred by *Mortgages*.  The

19  ancillary character of CTI's supplemental damages disclosure is confirmed in the

20  Complaint's "Prayer for Relief," in which CTI specifically refers only to "all liabilities,

21  losses, costs and expenses . . . and damages arising out of the government's investigation

22  into and claims regarding Trisenox reimbursement . . . ."  (Compl. at 18.)  Without the

23  government's investigation, there would have been no consequent business losses.  The

24  court will not condone an end run around *Mortgages* by permitting CTI to seek

ORDER GRANTING MOTION FOR
JUDGMENT ON THE PLEADINGS – 15

1    indemnification for $12.3 million in incidental, dependent business losses that bulged to

2    outweigh the specifically pleaded damages stemming from the underlying qui tam action

3    only after Lash moved for judgment on the pleadings.

**CONCLUSION**

        The court GRANTS Lash's motion for judgment on the pleadings (Dkt. # 26) and

DENIES CTI's motion to strike certain documents (Dkt. # 41).  The court STRIKES as

moot the other pending motions (Dkt. ## 55, 81, 82, 88, 89).  The court dismisses the

Complaint.  The parties are to bear their own costs and fees.

        Dated this 19th day of June, 2008.

_____
JAMES L. ROBART
United States District Judge

ORDER GRANTING MOTION FOR
JUDGMENT ON THE PLEADINGS – 16