UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CELL THERAPEUTICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE LASH GROUP, INC., et al., <br><br> Defendants. | CASE NO. C07-0310JLR <br><br> ORDER GRANTING MOTION TO STRIKE <br><br> AND <br><br> ORDER DENYING MOTION TO BIFURCATE |

## I. INTRODUCTION

Before the court are two motions: Plaintiff Cell Therapeutics, Inc.'s ("CTI") motion to strike (Dkt. # 145) and Defendant The Lash Group, Inc.'s ("Lash") motion to bifurcate (Dkt. # 144). Both motions address the same basic question: how should this court proceed on remand from the Ninth Circuit with respect to Lash's affirmative defense that CTI cannot recover against it for claims that only have the effect of offsetting CTI's alleged liability under the False Claims Act ("FCA")? Having reviewed

ORDER- 1

the motions, all submissions filed in support and opposition, and the Ninth Circuit's decision in *Cell Therapeutics Inc. v. Lash Group Inc.*, 586 F.3d 1204 (9th Cir. 2009), *as amended on denial of reh'g and reh'g en banc,* (Jan. 6, 2010), and deeming oral argument unnecessary, the court GRANTS CTI's motion to strike (Dkt. # 145) and DENIES as MOOT Lash's motion to bifurcate (Dkt. # 144).

## II. BACKGROUND

### A. Qui Tam Action

The parties are familiar with the factual background of this case, and the court will not repeat it here in full. In 2001, CTI hired Lash's predecessor, Defendant Documedics Acquisition Company, Inc. ("Documedics")[1], to handle Medicare reimbursement for CTI's cancer drug, Trisenox. (1st Am. Compl. (Dkt. # 139) ¶¶ 1-2.) Lash advised CTI that Medicare would reimburse for "off-label" uses of Trisenox. (*Id*. ¶ 3.) This advice turned out to be incorrect. In 2004, the government began investigating CTI and Lash for misrepresenting Trisenox's eligibility for reimbursement and for the improper Medicare claims that resulted. (*Id*. ¶¶ 30, 32-33.)

These improper Medicare claims triggered potential liability for CTI under the FCA. (*Id*. ¶ 33.) The FCA contains qui tam provisions that allow individuals, known as "relators," to bring suit on behalf of the United States for FCA violations. 31 U.S.C. § 3730(b). In 2006, James Marchese, a CTI employee, brought a qui tam suit against CTI

---

[1] The court refers to Lash and Documedics collectively as "Lash" because the two became the same entity when Documedics merged with Lash in 2003. (1st Am. Compl. ¶¶ 8-9.)

1  and others. *See United States ex. rel. Marchese v. Cell Therapeutics, Inc.*, No. C06-0168-
2  MJP (W.D. Wash.).  The government intervened, and alleged five claims against CTI,
3  only two of which arose under the FCA.  (1st Am. Compl. ¶ 36.)  CTI eventually entered
4  into a settlement agreement ("Settlement Agreement") with the government for the sum
5  of $10.5 million, plus interest, and CTI was dismissed from the qui tam suit.  (*Id.* ¶ 35.)
6  The Settlement Agreement provides that the government released CTI "from any civil or
7  administrative monetary claim[s]," and stated that the Settlement Agreement "is neither
8  intended by the parties to be, nor should be, interpreted as an admission of liability by
9  CTI."  (*Id.* ¶¶ 37-38.)

10  **B.     Present Action**

11         In January 2007, while the qui tam suit was pending, CTI filed this lawsuit against
12  Lash.  (*See* Compl. (Dkt. # 1).)  In its first amended complaint, CTI alleges five causes of
13  action against Lash: (1) declaratory relief that Lash is contractually obligated to
14  indemnify CTI for damages related to the government's investigation and the settlement
15  thereof; (2) breach of the terms of the contract between CTI and Lash; (3) breach of the
16  contract's indemnification clause; (4) breach of the implied warranty of good faith and
17  fair dealing; and (5) negligence/breach of the duty of care in providing professional
18  services.  (1st Am. Compl. ¶¶ 51-78.)  CTI seeks to recover against Lash for "all
19  liabilities, losses, costs and expenses (including reasonable attorneys' fees) and damages
20  arising out of the government's investigation into and claims regarding Trisenox
21  reimbursement."  (*Id.* at 19.)

22

In its amended answer, Lash asserted the affirmative defense that "CTI's claims are barred, in whole or in part, because it seeks indemnification or contribution for its liability under the False Claims Act (31 U.S.C. § 3729 et seq.)." (Am. Answer (Dkt. # 143) ¶ 82.)

**C.   Prior Proceedings**

This court previously granted Lash's motion for judgment on the pleadings, concluding that the Settlement Agreement barred CTI's claims, as discussed below in Part III.C. (Dkt. # 94.) CTI appealed to the Ninth Circuit. (Dkt. # 97.) The Ninth Circuit reversed this court's order and remanded the case for further proceedings. *Cell Therapeutics Inc.*, 586 F.3d at 1212-13.

### III.   ANALYSIS

**A.   The False Claims Act**

The FCA serves to discourage fraud against the government and imposes civil liability on any person who knowingly uses a "false record or statement to get a false or fraudulent claim paid or approved by the Government," 31 U.S.C. § 3729(a)(2) (1984)[2], and any person who "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid," 31 U.S.C. § 3729(a)(3). *See Cell Therapeutics Inc.*, 586 F.3d at 1205. The qui tam provisions of the FCA permit a relator to bring a civil action for violations of § 3729 on behalf of the relator and the government. 31 U.S.C. § 3730(b)(1). The government has the option of intervening. 31 U.S.C. § 3730(b)(2). If it

---

[2] The FCA was amended in 2009, but the court cites the prior version under which CTI was charged. *See Cell Therapeutics Inc.*, 586 F.3d at 1205 n.1.

does not intervene, the relator may proceed with the FCA litigation. 31 U.S.C. § 3730(c)(3). By contrast, if the government does intervene, the relator remains part of the suit as a qui tam plaintiff, but the government may dismiss or settle the action without the relator's approval. 31 U.S.C. 3730(c)(1) & (2)(A)-(B). The FCA entices relators to come forward by offering two important incentives: a significant bounty and whistle-blower protection. 31 U.S.C. § 3730(d) & (h); *Cell Therapeutics Inc.*, 586 F.3d at 1206.

**B.     The *Mortgages-Madden* Framework**

The Ninth Circuit's decisions in *Mortgages, Inc. v. United States District Court*, 934 F.2d 209 (9th Cir. 1991), and *United States ex rel. Madden v. General Dynamics Corp.*, 4 F.3d 827 (9th Cir. 1993), establish the general framework used by courts to evaluate the viability of counterclaims brought by qui tam defendants against relators in qui tam actions. These decisions have "fashioned a remedy designed to protect qui tam relators from retaliation by defendants." *Cell Therapeutics Inc.*, 586 F.3d at 1207. Together, *Mortgages* and *Madden*, as discussed in greater depth below, require courts to separate out those claims for damages brought by qui tam defendants which only have the effect of offsetting the defendant's liability for fraud or conspiracy to commit fraud under the FCA from those claims that are not dependent on a qui tam defendant's liability under the FCA. *Id*. at 1209-10. Dependent claims must be dismissed while independent claims may proceed on their merits. *Id*.; *Madden*, 4 F.3d at 830-31.

First, in *Mortgages*, the Ninth Circuit held that a qui tam defendant could not assert counterclaims against the relator seeking indemnification and contribution for the defendant's FCA liability. The court found nothing in the language of the FCA or its

legislative history to support such claims, concluding that "Congress did not intend to create a right of action for contribution or indemnification under the FCA." *Mortgages*, 934 F.2d at 213. The court also declined to recognize a federal common law right to contribution or indemnity. *Id*. In reaching this result, the court took note of the FCA's "comprehensive procedures for enforcement, including a provision to limit the reward of a qui tam plaintiff if the court determines that party is also a wrongdoer." *Id*. Finally, "because there is no basis in the FCA or federal common law to provide a right to contribution or indemnity in a FCA action," the Ninth Circuit held that "there can be no right to assert state law counterclaims that, if prevailed on, would end in the same result." *Id*. at 214.

Second, in *Madden*, the Ninth Circuit revisited the question of claims against a relator, establishing that a qui tam defendant may bring independent claims against a relator. *Madden*, 4 F.3d at 831. The court rejected a blanket rule that counterclaims are forbidden in qui tam actions because such a rule would unfairly presume that all qui tam defendants are liable, effectively preclude qui tam defendants from seeking damages against relators, and ultimately violate procedural due process. *Id*. Instead, the court concluded that qui tam defendants can bring counterclaims for independent damages without running afoul of *Mortgages* and without regard to the qui tam defendant's liability:

> The decision in *Mortgages* is designed to prevent qui tam defendants from offsetting their liability. Counterclaims for indemnification or contribution by definition *only* have the effect of offsetting liability. Counterclaims for independent damages are distinguishable, however, because they are not dependent on a qui tam defendant's liability.

*Id*. at 830-31.

The Ninth Circuit, to prevent qui tam defendants from engaging in an end run around *Mortgages*, has set forth a two-stage process for resolving FCA liability prior to adjudicating counterclaims:

> If a qui tam defendant is found liable, the counterclaims can then be dismissed on the ground that they will have the effect of providing for indemnification or contribution. On the other hand, if a qui tam defendant is found not liable, the counterclaims can be addressed on the merits.

*Id*. at 831; *see Cell Therapeutics Inc.*, 586 F.3d at 1209. It is necessary to address the issue of a qui tam defendant's liability as the first stage of the process because "even dependent counterclaims should not be foreclosed until the qui tam defendant's liability is established." *Cell Therapeutics Inc.*, 586 F.3d at 1208.

**C.     The Ninth Circuit's Opinion in *Cell Therapeutics***

The present case introduced a new wrinkle into the *Mortgages-Madden* framework, namely, "what happens when a target defendant settles with the government and the relator and then seeks recovery against a third party for contractual indemnity and independent claims?" *Cell Therapeutics Inc.*, 586 F.3d at 1205. Unlike *Mortgages* and *Madden*, which were qui tam actions and involved counterclaims against relators, this case is not a qui tam action and concerns a former qui tam defendant's claims against a third party, not a relator. This court originally concluded that *Mortgages* required the

ORDER- 7

dismissal of CTI's claims against Lash because its claims were dependent on its FCA liability and granted Lash's motion for judgment on the pleadings. (Dkt. # 94.) In reaching this conclusion, the court viewed the Settlement Agreement as effectively establishing CTI's liability.

Addressing this issue of first impression on appeal, the Ninth Circuit reversed, concluding that "the FCA does not preclude such claims." *Cell Therapeutics Inc.*, 586 F.3d at 1205; *see generally* Claire M. Sylvia, *The False Claims Act: Fraud Against the Government* § 11:95 (2010). In its analysis, the Ninth Circuit first determined that certain of CTI's claims, regardless of the effect of the Settlement Agreement, did not only have the effect of offsetting FCA liability and thus should not have been treated as dependent claims subject to dismissal. *Id*. at 1209-10. The court next determined that the Settlement Agreement does not constitute a finding of liability under the FCA and, therefore, CTI's indemnification claims should not have been dismissed on that basis. *Id*. at 1213. The Ninth Circuit ultimately held that "qui tam defendants may bring third party claims under the circumstances outlined in [its] opinion," *id*. at 1213, and remanded the case with the following instructions:

> The district court should reconsider whether the claims are independent and, for third party claims that are not independent, should assess how to proceed in light of our holding that the Settlement Agreement does not constitute a finding of liability under the FCA.

*Id*. at 1212-13.

### D. Motion to Strike

Pursuant to Federal Rule of Civil Procedure 12(f), CTI moves to strike Lash's affirmative defense that some or all of CTI's claims are barred because it is allegedly liable under the FCA. (Mot. to Strike at 1.) Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." CTI argues that Lash's defense must be stricken because Lash is not a relator; Lash does not have standing to assert the issue of liability; and the issue of CTI's alleged FCA liability has already been resolved. In response, Lash contends that CTI's alleged FCA liability is central to CTI's indemnification claims; that the Ninth Circuit did not disturb the principle that qui tam defendants may not seek indemnification for their FCA liability; that standing is not at issue; and that CTI's alleged FCA liability has not been resolved.

The present inquiry asks, in essence, whether Lash is entitled to litigate the issue of CTI's alleged liability under the FCA in this action. Due to the Settlement Agreement, this issue was not resolved in the qui tam action: CTI was neither found liable nor found not liable. By litigating the issue in this action, Lash hopes to establish a basis to dismiss, either in part or in whole, CTI's indemnification claims, which seek, *inter alia*, to recoup costs arising from CTI's defense and settlement of the qui tam action. Having studied the Ninth Circuit's opinion in *Cell Therapeutics* and having considered the arguments of the parties, the court concludes that CTI's motion to strike must be granted.

The court begins with the Ninth Circuit's holding that the Settlement Agreement does not constitute a finding of liability under the FCA and, accordingly, that CTI's indemnification claims should not have been dismissed on that basis. *Cell Therapeutics Inc.*, 586 F.3d at 1212-13. In other words, the Settlement Agreement, standing alone, does not establish that CTI's indemnification claims only have the effect of offsetting liability and must be dismissed as dependent claims. This holding must be viewed in relation to the teaching of *Madden* that, absent a finding of FCA liability, dependent claims cannot be dismissed. As the Ninth Circuit explains, "even dependent counterclaims should not be foreclosed *until the qui tam defendant's liability is established*" because premature dismissal would offend due process. *Id*. at 1208 (emphasis added). Accordingly, CTI's indemnification claims cannot be dismissed until such time as CTI's alleged FCA liability is established.

In this action, however, CTI cannot be held liable under the FCA. This action is not a qui tam action, CTI is not now a qui tam defendant, and proceedings in this action cannot subject CTI to actual liability under the FCA. Thus, even if the issue of CTI's alleged FCA liability were litigated in this action, it would not alter the simple fact that none of CTI's indemnification claims have the actual effect of offsetting its FCA liability because CTI still would have no such liability. The consequence is that Lash cannot establish CTI's alleged FCA liability here through additional proceedings.[3] Without the

---

[3] Moreover, CTI is not at risk of being held liable under the FCA in the qui tam action in light of the Settlement Agreement and resulting dismissal.

1  ability to establish liability, Lash likewise cannot show that CTI's indemnification claims
2  should be dismissed on this basis.  Though unsatisfactory to Lash, this result accords with
3  principles of procedural due process and recognizes, as did the Ninth Circuit, that the
4  interests which animate this action are different than those at play in qui tam actions.[4]  *Id*.
5  at 1213.
6      In support of its position, Lash focuses on the Ninth Circuit's statement that
7  "claims that merely indemnify CTI for its FCA liability or seek contribution for the same
8  must be dismissed if CTI is liable under the FCA."  *Id.* at 1210.  Lash reads this
9  statement, paired with the Ninth Circuit's instructions, as an invitation to litigate the issue
10 of CTI's liability.  This statement is plain on its face, but difficult to reconcile with *Cell*
11 *Therapeutics* as a whole.[5]  Yet, even accepting this statement as a correct statement of
12 law, the court is not persuaded that the Ninth Circuit envisioned that this court would

---

[4] Because this is not a qui tam action, "[t]he reasons for restricting the ability of a qui tam defendant to seek recovery against a relator are not in play here."  *Cell Therapeutics Inc.*, 586 F.3d at 1213.  First, CTI's indemnification claims do not run afoul of the FCA's comprehensive procedures to restrict the ability of a relator to collect a qui tam bounty because "there are no counterpart or comprehensive procedures in the FCA to address the wrongdoing of a nonrelator third party."  *Id*.  Second, "[t]he need [the Ninth Circuit] identified in *Madden* to ensure that relators do not engage in wrongful conduct is no more acute than the need to ensure that third parties do not avoid liability for their wrongful conduct, even if the party wronged is a qui tam defendant."  *Id*.  Third, "unlike *Mortgages*, this case does not present the threat of chilling future suits by qui tam relators, who may collect their bounties regardless of whether the qui tam defendant seeks relief from a third party."  *Id*.  These interests counsel in favor of allowing CTI to assert its indemnification claims against Lash instead of dismissing them without evaluating the merits of the claims.

[5] Specifically, the Ninth Circuit's statement is difficult to reconcile with its rejection of the gloss placed on *Mortgages* by those courts that "have interpreted *Mortgages* to foreclose qui tam defendants from bringing claims against third parties," as well as the court's discussion of the different interests at play in qui tam actions and third party actions.  *Cell Therapeutics Inc.*,

ORDER- 11

preside over a quasi-qui tam action as a prelude to sorting between independent and dependent claims, nor is there any indication that such an approach would be appropriate or feasible. Instead, the Ninth Circuit's conclusion that "qui tam defendants may bring third party claims under the circumstances outlined in [its] opinion" suggests simply that CTI's claims may proceed on the merits. *Id.* at 1213. Though the result might have been different if CTI's alleged FCA liability had been established in the qui tam action, the fact is that it was not.

The court is also not persuaded by Lash's other arguments. First, the court declines to read overmuch into the fact that the Ninth Circuit remanded this case. Lash contends that the Ninth Circuit remanded with the instruction that this court devise a procedure for separating independent and dependent claims. (Resp. to Mot. to Strike (Dkt. # 148) at 5.) The court agrees that the Ninth Circuit remanded for this court to distinguish between different types of claims, but disagrees that the Ninth Circuit anticipated the result of this sorting process or indicated that Lash is entitled to litigate the issue of liability. Rather, as discussed above, this court is of the view that CTI's indemnification claims must be allowed to proceed on their merits because Lash cannot

---

586 F.3d at 1212-13. CTI suggests that the court's statement is merely hypothetical and deserves little weight. (Mot. at 10.) This court, too, hesitates to rest its analysis on this statement until the Ninth Circuit has the opportunity to squarely address the application of the *Mortgages-Madden* framework to a third party action in which the plaintiff has previously been found liable under the FCA. At a minimum, the Ninth Circuit's rejection of the reasoning in *United States v. Dynamics Research Corp.*, 441 F. Supp. 2d 259, 264 (D. Mass. 2006), suggests that the court views the application of *Mortgages* and *Madden* to third party actions as not yet fully settled. *See Cell Therapeutics Inc.*, 586 F.3d at 1213 ("*Mortgages* did not address that issue."). In any event, even accepting this statement wholesale, the court does not view it as requiring Lash's favored approach on the facts of this case, in which there has been no finding of liability.

establish CTI's alleged FCA liability in this action.  Second, the court rejects Lash's argument that it has a right to litigate the issue of CTI's alleged FCA liability in order to probe the basis of the Settlement Agreement.  (*Id*. at 6.)  This argument conflates two distinct issues and the case law cited by Lash does not mandate its preferred result. Third, though mindful of Lash's view that CTI "affirmatively and voluntarily placed its FCA liability at issue by seeking indemnification" from Lash, the court finds that the interests in this action weigh against Lash's preferred approach.  (*Id*.)

In sum, the court reads the Ninth Circuit's opinion in *Cell Therapeutics*, in conjunction with *Mortgages* and *Madden*, to establish that CTI's indemnification claims against Lash may proceed on their merits unless Lash can establish that the claims only have the effect of offsetting CTI's alleged FCA liability.  Lash cannot do so.  The Ninth Circuit found that the Settlement Agreement did not constitute a finding of FCA liability, and CTI cannot now be exposed to FCA liability as the result of proceedings in this action.  In response to CTI's motion to strike, Lash proposes that CTI's alleged FCA liability be resolved for purposes of its affirmative defense by litigating the issue as a preliminary stage of the proceedings on remand.  Lash suggests no other means by which to prove up CTI's alleged FCA liability.  Having declined Lash's proposal, the court discerns no basis upon which Lash's affirmative defense could be deemed potentially

sufficient or viable as a matter of law. Therefore, pursuant to Rule 12(f), the court grants CTI's motion to strike and strikes the Lash's affirmative defense.[6]

**E.     Motion to Bifurcate**

Pursuant to Federal Rule of Civil Procedure 42(b), Lash moves to bifurcate the trial. Under Rule 42(b), "[f]or convenience, to avoid prejudice or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." In light of the court's ruling on CTI's motion to strike, the court denies as moot Lash's motion to bifurcate.

### IV.     CONCLUSION

For the foregoing reasons, the court GRANTS CTI's motion to strike (Dkt. # 145) and DENIES as MOOT Lash's motion to bifurcate (Dkt. # 144).

Dated this 3rd day of August, 2010.

_____
JAMES L. ROBART
United States District Judge

---

[6] This ruling does not prevent Lash from presenting evidence of CTI's alleged wrongdoing in the course of asserting its other affirmative defenses.

ORDER- 14