UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CELL THERAPEUTICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE LASH GROUP, INC., et al. <br><br> Defendants. | CASE NO. C07-0310JLR <br><br> ORDER |

## I.   INTRODUCTION

Before the court are Plaintiff Cell Therapeutics, Inc.'s ("CTI") motions for leave to file certain documents under seal (Dkt. # 179) and motion for a protective order (Dkt. # 181). Defendant The Lash Group, Inc. ("Lash") opposes CTI's motion for a protective order (*see* Dkt. ## 200, 201), but has filed no opposition to CTI's motion to file certain documents under seal. Having considered the parties' submissions with regard to the foregoing motions, the court GRANTS both motions (Dkt. ## 179, 181).

ORDER- 1

## II. BACKGROUND

The motions before the court involve a 2001 memorandum from Nixon Peabody, LLP containing attorney-client privileged communications to CTI. In an April 26, 2006 letter, the government referenced this memorandum in a letter to CTI's counsel with regard to a qui tam action pending at that time against CTI. (Second Calfo Decl. (Dkt # 205) Ex. 1.) Counsel for CTI responded in a letter dated April 28, 2006, stating that the memorandum had been identified on a privilege log, and that CTI was not prepared to waive the attorney-client privilege or to provide a copy to the government. (*Id.*) The underlying qui tam action was settled a year later in April 2007. (Reply (Dkt. # 204) at 5 n.3.)

In the spring of 2008, prior counsel to CTI learned for the first time that one of CTI's former employees, James Marchese, had provided a copy of the privileged memorandum to both the government and to Lash without authorization from CTI. (Reply at 2; *see also* Myers Decl. (Dkt. # 201) Ex. C.) CTI's national sales manager had provided a copy of the memorandum to Mr. Marchese so that Mr. Marchese could assist him in understanding the document. (Calfo Decl. (Dkt. ## 180 (sealed), 182 (redacted)) Ex. 2.) At the time, Mr. Marchese was working as a "Specialist" on CTI's reimbursement policies and strategies (a subject of the memorandum). (*Id.*)

During an April 2008 Federal Rule of Civil Procedure 37 conference, counsel for CTI informed Lash that CTI did not sanction Mr. Marchese's disclosure of the memorandum and that the memorandum was privileged. (Calfo Decl. Ex. 3.) Nevertheless, a few weeks later, Lash marked the 2001 memorandum as an exhibit

during the May 16, 2008 deposition of Mr. Marchese. (*Id.*, Ex. 2.) Counsel for CTI again objected on grounds of attorney-client privilege. To avoid the possibility of having to depose Mr. Marchese a second time, counsel for both CTI and Lash agreed that the questioning of Mr. Marchese with regard to the memorandum during the course of his deposition would not constitute a waiver of CTI's attorney-client privilege. (*Id.*)

On June 4, 2008, counsel for CTI again requested that Lash return or destroy all copies of the privileged memorandum. (Myers Decl. Ex. C.) On June 9, 2008, Lash refused to return the document asserting that any privilege had been waived. (*Id.*, Ex. D.) On June 19, 2008, the court entered a judgment of dismissal against CTI. (Dkt. # 94.)

An appeal followed, and on January 22, 2010, the mandate from the Ninth Circuit was entered. (Dkt. # 118.) During this period, CTI's counsel changed a number of times. (*See* Dkt. ## 103, 113.) CTI's present counsel entered the action in January 2011, and brought the present motion for protective order on March 25, 2011, within the time period allowed for discovery motions. (*See* Scheduling Order (Dkt. # 142).)

### III.   ANALYSIS

CTI bears the burden of proving the attorney-client privilege exists with regard to the memorandum and that the privilege has not been waived. *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011). The parties do not dispute that the memorandum contains attorney-client communications. The dispute centers on whether or not the privilege has been waived. (*See* Resp. (Dkt. # 200) at 7 ("... Lash only contests ... that the privilege has not been waived.").)

CTI's disclosure of the document to Mr. Marchese during the course of his employment at CTI did not waive the privilege. Here, Mr. Marchese testified that he was provided the document by CTI's national sales manager because the manager needed Mr. Marchese's assistance in understanding the document, and Mr. Marchese was working as a "Specialist" with regard to a subject matter covered by the memorandum. "A corporation does not waive its privilege when non-lawyer employees send or receive communications because corporate communications which are shared with those having need to know of the communications are confidential for purposes of the attorney-client privilege." *Deel v. Bank of Am., N.A.,* 227 F.R.D. 456, 460 (W.D. Va. 2005); *see also SMC Corp. v. Xerox Corp.,* 70 F.R.D. 508, 518 (D. Conn. 1976) ("A privileged communication should not lose its protection if an executive relays legal advice to another who shares responsibility for the subject matter underlying the consultation.").

In addition, Mr. Marchese's disclosures of the document to the government in the context of the qui tam action or to Lash in the context of this litigation also did not waive CTI's privilege. Mr. Marchese had no authority from CTI to make the disclosures. "[T]he power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors." *Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 348 (1985). "Since a corporate employee cannot waive the corporation's privilege, that same individual as an ex-employee cannot do so." *See United States v. Chen,* 99 F.3d 1495, 1502 (9th Cir. 1996) (holding that a former employee's disclosures of attorney-client communications could not and did not waive the privilege). Indeed, Lash does not assert that CTI's initial disclosure of the

ORDER- 4

document to Mr. Marchese or Mr. Marchese's disclosures to the government or to Lash resulted in any waiver of CTI's privilege. (*See generally* Resp.)

Lash asserts that CTI waived its attorney-client privilege "by failing to protect the [m]emorandum for years after it knew the [m]emorandum [had been] disclosed to third parties. . . ." (*Id.* at 8.) "In cases involving the 'inadvertent' disclosure of privileged attorney-client information, courts in the Ninth Circuit apply the totality of the circumstances approach." *United States v. SDI Future Health, Inc.,* 464 F. Supp. 2d 1027, 1045 (D. Nev. 2006) (citing *United States ex rel. Bagley v. TRW, Inc.,* 204 F.R.D. 170, 177 (C.D. Cal. 2001)). Under this approach, courts consider (1) the reasonableness of the precautions to prevent inadvertent disclosure, (2) the time taken to rectify the error, (3) the scope of discovery, (4) the extent of the disclosure, and (5) the "overriding issue of fairness." *SDI Future Health,* 464 F. Supp. 2d at 1045. In this case, the disclosure was involuntary on the part of CTI, rather than inadvertent. The key factors, therefore, relate to CTI's efforts to protect its privilege following disclosure, and the overriding issue of fairness. *Id.* (citing *United States v. de la Jara,* 973 F.2d 746 (9th Cir. 1992)).

Lash relies primarily on *de la Jara*. (Resp. at 8-9.) However, this decision is inapposite. In *de la Jara*, a letter to a defendant from his attorney was seized by police officers during the execution of a warrant. 973 F.2d at 748. Following the seizure, the court held that the defendant had waived the attorney-client privilege as it pertained to the letter because he "did *nothing* to recover the letter or protect its confidentiality during the six months between its seizure and introduction into evidence." *Id.* at 750 (italics added). Here, it cannot be said that CTI did nothing to protect the confidentiality of the

memorandum at issue. To the contrary, in April 2006, CTI informed the government that the memorandum was privileged and that it did not intend to waive the privilege. Although CTI learned in the spring of 2008 the Mr. Marchese had provided a copy of the memorandum to the government, there is no evidence on the record before this court that the government ever disputed CTI's April 2006 assertion of privilege or ever used the document. As noted above, the qui tam action was settled in April 2007 – before CTI learned that the government had acquired a copy of the memorandum.

Further, once CTI learned that Lash had acquired a copy of the memorandum, CTI promptly asserted the privilege during an April 2008 Federal Rule of Civil Procedure 37 conference with Lash. When Lash nevertheless attempted to introduce the document into Mr. Marchese's May 2008 deposition, CTI secured Lash's agreement that the use of the document during the deposition would not be considered a waiver of the privilege until such time as the parties could resolve the issue with the court. Following the Marchese deposition, in early June 2008, CTI again asserted the attorney-client privilege to Lash, and requested that Lash return or destroy all copies of the memorandum. Lash refused, but less than two weeks later the district court entered a judgment of dismissal against CTI. (Dkt. # 94.)

The issue lay dormant while an appeal to the Ninth Circuit ensued. The court's order of dismissal was reversed and remanded by the Ninth Circuit, and the Ninth Circuit's mandate was entered on January 22, 2010. (Dkt. # 118.) Despite the remand in January 2010, CTI did not move for a protective order with regard to the memorandum until more than one year later on March 25, 2011. (Dkt. # 181.) It is this period of

inactivity with regard to CTI's assertion of privilege which constitutes Lash's strongest evidence of waiver. Nevertheless, there is no evidence that Lash attempted to use the document during this period of time. Further, unlike *de la Jara*, CTI was not silent on the issue of privilege. Lash could not reasonably assert that it was unaware of CTI's claim of privilege with regard to the memorandum.

The court further notes that CTI's counsel has changed a number of times during the course of this litigation. (*See, e.g.,* Dkt. ## 103, 113.) While a change of counsel does not excuse a delay in moving for a protective order, the court is hesitant to find a waiver of CTI's attorney-client privilege based at least in part on counsel's apparent inability to transition the case and all its details smoothly from one law firm or lawyer to another. The court also notes that CTI's present counsel did promptly raise the issue shortly following his initial involvement in the litigation. (Reply at 3.)

The court finds that, in the circumstances of this litigation, the efforts that CTI has taken to protect its privilege with regard to the memorandum following Mr. Marchese unauthorized disclosure are reasonable. CTI has repeatedly asserted privilege with regard to the memorandum and requested that all copies by returned or destroyed. In addition, CTI has moved for a protective order. While the time it took CTI to seek judicial intervention has been long, in light of the intervening appeal to the Ninth Circuit, along with CTI's changes in counsel, the court does not find the length of time to be unreasonable. Considering the facts present here, overriding issues of fairness persuade the court that CTI has not waived its attorney-client privilege with regard to the memorandum. *See, e.g. SDI Future Health,* 464 F. Supp. 2d at 1044 (privilege not

ORDER- 7

waived as to documents seized during execution of search warrant when defendants specifically identified the documents as privileged and requested their return within one month of seizure, even though defendants failed to seek judicial action until three years later). Accordingly, the court GRANTS CTI's motion for a protective order. (Dkt. # 181), and precludes use of the memorandum at trial.

In addition, CTI has moved to seal certain documents it filed in connection with its motion for a protective order. (*See* Dkt. ## 179, 180.) Pursuant to Western District of Washington Local Rules CR 5(g)(2), the court may, for "good cause under [Federal] Rule [of Civil Procedure] 26(c)" seal a document attached to a nondispostive motion, or seal a document attached to a dispositive motion upon a "compelling showing that the public's right of access is outweighed by the interests of the public and the parties in protecting the court's files from public review." Local Rules W.D. Wash. CR 5(g)(2). Similarly, the Ninth Circuit has held that "compelling reasons" must be shown to seal judicial records attached to a dispositive motion. *Kakakama v. City and Cnty. of Honolulu,* 447 F.3d 1172, 1179 (9th Cir. 2006). The court finds that CTI has met the standards recited above for sealing because the documents at issue contain attorney-client communications. Accordingly, the court GRANTS CTI's motion for an order sealing these documents from public view. (Dkt. # 179).

## IV. CONCLUSION

Based on the foregoing, the court GRANTS CTI's motion for a protective order (Dkt. # 181) concerning the attorney-client memorandum at issue here, and precludes its

ORDER- 8

1  use at trial.  In addition, the court the court GRANTS CTI's motion to seal (Dkt. # 179),

2  and directs the clerk to maintain the seal on docket number 180.

3       Dated this 18th day of May, 2011.

4

5

6                                    _____
                                     JAMES L. ROBART
7                                    United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 9